UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MARIE HANRAHAN-FOX and <br> WILLIAM FOX, <br><br> Plaintiff(s), <br><br> vs. <br><br> TOP GUN SHOOTING SPORTS, LLC <br> et al., <br><br> Defendant(s). | Case No. 4:18-cv-01410-SRC |

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendant Top Gun Shooting Sports, LLC's Motion for Summary Judgment [51]. Plaintiffs oppose the Motion. For the reasons set forth below, the Court DENIES the Motion.

I.     **BACKGROUND**

Plaintiffs allege that on or about June 1, 2018, Plaintiff Marie Hanrahan-Fox patronized the shooting range operated by Defendant Top Gun Shooting Sports, LLC in Arnold, Missouri. Doc. 29, ¶ 1. Plaintiffs allege that Top Gun provided Ms. Hanrahan-Fox with inadequate hearing protection, and that Ms. Hanrahan-Fox's subsequent use of Top Gun's shooting range exposed her to dangerously loud noise levels of gunfire. *Id.* at ¶¶ 9-10, 19. Plaintiffs allege that Ms. Hanrahan-Fox suffered irreversible hearing loss as a direct result of this exposure and is now legally deaf. *Id.* at ¶¶ 20-22. Ms. Hanrahan-Fox brings claims against Top Gun for negligence and failure to warn, seeking damages in excess of $75,000. *Id.* at Counts I and II. Ms.

Hanrahan-Fox's husband, Plaintiff William Fox, brings a claim for loss of consortium and also seeks damages in excess of $75,000. *Id.* at Count III.[1]

Top Gun filed the present Motion for Summary Judgment, Doc. 51, on September 25, 2019. As its sole basis for summary judgment, Top Gun asserts that Ms. Hanrahan-Fox waived her claims against Top Gun by signing a valid and enforceable liability release. Doc. 51, pg. 3-5.

**II.    STANDARD**

Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Cordry v. Vanderbilt Mortg. & Fin., Inc.*, 445 F.3d 1106, 1109 (8th Cir. 2006) (quoting *Bockelman v. MCI Worldcom, Inc.*, 403 F.3d 528, 531 (8th Cir. 2005)). The proponent of a motion for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The proponent need not, however, negate the opponent's claims or defenses. *Id.* at 324–25.

In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). A "genuine" dispute of material fact is more than "some metaphysical doubt as to the material facts." *Id.* at 586. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving

---

[1] Plaintiffs also assert a product liability claim against separate Defendant Pyramex Safety Products, LLC. Doc. 1, at Count IV. Pyramex has not moved for summary judgment and that claim is not before the Court.

party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "If the evidence is merely colorable...or is not significantly probative...summary judgment may be granted." *Id.* at 249–50 (citations omitted).

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and draw all justifiable inferences in its favor. *Id.* at 255. The Court's function is not to weigh the evidence, but to determine whether a genuine issue for trial exists. *Id.* at 249.

## III. DISCUSSION

Top Gun argues that the Court should enter summary judgment in its favor because Ms. Hanrahan-Fox signed a liability release prior to entering Top Gun's shooting range. Doc. 51, pg. 3. Top Gun represents the following facts as uncontroverted on the record: Top Gun requires all patrons entering the shooting range to sign a "Release and Hold Harmless Agreement." Top Gun does not admit any patron to the range unless the patron first signs the Agreement, and Top Gun would not have allowed Ms. Hanrahan-Fox to enter the shooting range unless she had signed the Agreement. Doc. 53, ¶ 5. The Agreement in question provides as follows:

### RELEASE AND HOLD HARMLESS AGREEMENT

In consideration for using the facilities of Top Gun Shooting Sports, LLC, the undersigned Participant **HEREBY AGREES TO WAIVE, RELEASE, AND HOLD HARMLESS** Top Gun Shooting Sports, LLC from any and all claims for damages for death, personal injury, or property damage which they may have or which they may accrue as a result of participation in any activity and event including, but not limited to, range usage, training, instruction, and organized shooting events.

By signing this Release and Hold Harmless Agreement, the undersigned recognizes that the sport of rifle, pistol, and shotgun shooting or related activities present certain inherent dangers that cannot be eliminated even by the exercise of reasonable care. As such, the undersigned participant hereby expressly assumes the risk that is inherent to the sport of rifle, pistol, and shotgun shooting.

3

> By signing this Release and Hold Harmless Agreement, the undersigned Participant **assumes the risk** inherent to rifle, pistol, and shotgun shooting, and further acknowledges that he/she understands that all risks, whether known or unknown, are expressly assumed by the undersigned, and that all claims are expressly waived in advance.
>
> By signing this Release, I acknowledge to Top Gun Shooting Sports that I have not been convicted of a Felony, am not currently subject to a restraining order (adult abuse order), nor am I currently under indictment for a Felony Violation. I have not been institutionalized for any mental disorders, nor has a U.S. Judge ordered such an institutional commitment. I have read, understand, and agree to abide by the Range Safety Rules for Top Gun Shooting Sports.

Doc. 53-4, at "Exhibit A."

In opposition to Top Gun's Motion for Summary Judgment, Plaintiffs argue that the Agreement is not an effective waiver of liability under Missouri law.[2] Doc. 59. In Missouri, releases of future negligence are not void as against public policy, but "they are disfavored and strictly construed." *Warren v. Paragon Techs. Grp., Inc.*, 950 S.W.2d 844, 845 (Mo. 1997) (citing *Alack v. Vic Tanny Int'l of Missouri, Inc.*, 923 S.W.2d 330, 334 (Mo. 1996)). To effectively release a party from its own future negligence, exculpatory language must be "clear, unambiguous, unmistakable, and conspicuous". *Alack*, 923 S.W.3d at 337. Further, "[t]he exculpatory language must effectively notify a party that he or she is releasing the other party from claims arising from the *other party's own negligence*." *Id.* (emphasis added). Accordingly, the *Alack* Court established a "bright-line test", requiring that "the words 'negligence' or 'fault' or their equivalents must be used conspicuously so that a clear and unmistakable waiver and shifting of risk occurs." *Id.* at 337. An exculpatory clause that fails to meet these requirements is ambiguous and unenforceable. *Id.* at 337-38.

---

[2] Plaintiffs also argue, in the alternative, that a genuine issue of material fact exists as to whether Ms. Hanrahan-Fox actually signed the Agreement. Doc. 59. Because the validity of the Agreement is dispositive of the Motion, the Court need not reach Plaintiffs' alternative argument.

4

The Court finds that the Agreement is ambiguous under *Alack's* bright-line test.[3] The Agreement does not include the words "negligence" or "fault." Top Gun argues that the Agreement is nevertheless valid and enforceable because it "clearly conveyed to Ms. Hanrahan-Fox that she was releasing Top Gun from negligence claims by the broad language regarding waiver, release, and assumption of risk, and her acknowledgement that certain dangers 'cannot be eliminated even by the use of reasonable care.'" Doc. 62, pg. 4-5. First, the Agreement's broad waiver language "for any and all claims" is essentially identical to language the Missouri Supreme Court expressly rejected in *Alack*. 923 S.W.3d at 337 (exculpatory clause purporting to waive liability from "any and all claims" was ambiguous because claims for intentional torts and gross negligence cannot be waived under Missouri law); *see also Hornbeck v. All Am. Indoor Sports, Inc.*, 898 S.W.2d 717, 721 (Mo. Ct. App. 1995) (clause purporting to release sports facility for "any and all claims...arising from said participation [in sports activities]" did not clearly and unambiguously exonerate sports facility from its own negligence).

Second, the language of the Agreement regarding assumption of risk does not satisfy *Alack's* bright-line test. The Missouri Court of Appeals considered a similar exculpatory provision in *Handwerker v. T.K.D. Kid, Inc.*, 924 S.W.2d 621, 622 (Mo. Ct. App. 1996). In *Handwerker*, the provision at issue provided "I, [plaintiff] understand that there is a risk in participating in above seminar and I will assume all risks and liabilities in attending said seminar." *Id.* at 622. The Court of Appeals found that this provision "did not employ the terms 'negligence' or 'fault' or their equivalents" and was therefore ambiguous and unenforceable under the bright-line test set out in *Alack*. *Id.* In the present case, the Agreement's language

---

[3] "A determination as to whether a [contract] is ambiguous is a question of law to be decided by the court." *Alack*, 923 S.W.2d at 337 (quoting *Royal Banks of Missouri v. Fridkin*, 819 S.W.2d 359, 361 (Mo. banc 1991)).

providing that the signatory "assumes the risk that is inherent to the sport of rifle, pistol, and shotgun shooting" suffers the same deficiency.

Finally, the Agreement's language providing that "the sport of rifle, pistol, and shotgun shooting or related activities present certain inherent dangers that cannot be eliminated even by the exercise of reasonable care" does not cure the deficiencies described above. Top Gun's Motion emphasizes this language, apparently suggesting that the phrase "exercise of reasonable care" is equivalent to "negligence" or "fault." Doc. 52, pg. 4-5; *see Alack*, 923 S.W.3d at 337 ("The words 'negligence' or 'fault' or their equivalents must be used…").

Assuming without deciding that the phrase "exercise of reasonable care" may sometimes be equivalent to negligence or fault, the use of that phrase in the Agreement does not satisfy *Alack's* requirement that "exculpatory language must effectively notify a party that he or she is releasing the other party from claims arising from *the other party's own negligence*." *Id.* (emphasis added). The Agreement does not effectively convey that Ms. Hanrahan-Fox was waiving any claim that could arise if Top Gun failed to exercise reasonable care. On the contrary, Ms. Hanrahan-Fox could have reasonably understood this language to refer only to *her own* exercise of reasonable care. Thus, the language is at least ambiguous. In Missouri, releases of liability for a party's own negligence must be "clear, unambiguous, unmistakable, and conspicuous." *Id.* The Agreement fails to meet this standard.

For the reasons set forth above, the Court finds that the Release and Hold Harmless Agreement is ambiguous as a matter of law. Thus, the Agreement is not an effective release of Ms. Hanrahan-Fox's claims against Top Gun under Missouri law, and the Court denies Top Gun's Motion for Summary Judgment on Ms. Hanrahan-Fox's claims for negligence (Count I) and failure to warn (Count II).

Top Gun also requests summary judgment on Mr. Fox's loss of consortium claim (Count III).  Top Gun's sole argument for summary judgment on Count III is that Mr. Fox's loss of consortium claim cannot exist independently of Ms. Hanrahan-Fox's claims against Top Gun.  Because Ms. Hanrahan-Fox's claims survive summary judgment, the Court also denies Top Gun's motion for summary judgment on Count III.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Top Gun Shooting Sports, LLC's Motion for Summary Judgment [51] is DENIED.

So Ordered this 9th day of December, 2019.

_____
**STEPHEN R. CLARK**
**UNITED STATES DISTRICT JUDGE**